# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DEVON DEAN, | : | |
| Plaintiff, | : | No. 3:18-cv-1861 (KAD) |
| | : | |
| v. | : | |
| | : | |
| LT. IOZZIA, et al., | : | |
| Defendants. | : | |

# INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Devon Dean ("Dean"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 asserting claims for use of excessive force, retaliation, and violation of his right to freely exercise his religion. The named defendants are Lieutenant Iozzia, Unit Manager John/Jane Smith, Captain Shabenas, Warden Santiago, Deputy Warden Zegarzulski, Deputy Warden Martin, Commissioner Scott S. Semple, and Unit Manager Conger. Dean seeks medical treatment and damages from the defendants in their individual and official capacities. The complaint was received on November 13, 2018, and Dean's motion to proceed *in forma pauperis* was granted on November 29, 2018.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On January 25, 2016, Dean was confined at Corrigan-Radgowski Correctional Center. Lieutenant Iozzia and other officers were escorting Dean to the restrictive housing unit ("RHU"). The correctional officer on Dean's right, John or Jane Smith, squeezed and twisted Dean's wrist. Dean did not think that he was resisting the escort or acting in a threatening manner, so he told the officer that excessive force was not necessary.

Upon his arrival in RHU, Dean asked Lieutenant Iozzia to tell his officers to stop using excessive force. Lieutenant Iozzia became loud and belligerent. He was both verbally and physically aggressive. An altercation resulted. Dean spit at the officers and was assaulted by them. Dean was punched, kicked, and sprayed with a chemical agent. During this time, Dean's hands were cuffed behind his back.

When the assault ended, Dean was escorted to RHU cell 112. En route, his head and face

were smashed against walls and doors. Dean was left naked in the cell for ten hours. His injuries were not addressed. No defendant provided any assistance.

For the next 72 hours, Dean remained in four-point restraints. Captain Shabenas ordered that Dean receive only cheese and bread sandwiches and orange juice, rather than the common-fare tray required to address his Rastafarian religious beliefs. On February 4, 2016, Lieutenant Tosses arranged for Dean to receive medical attention.

On February 15, 2016, Dean requested medical assistance for the injuries sustained on January 25, 2016. His name was added to the sick call waiting list. On February 26, 2016, a doctor prescribed 600 mg Motrin for three months.

Dean was transferred to MacDougall-Walker Correctional Institution ("MCI"). On March 2, 2016, Dean requested medical treatment at MCI. He was added to the MD sick call list. On March 10, 2016, Dean was seen by a nurse for the injuries to his left wrist. By this time, he was unable to move his arm. On March 13 and 29, 2016, Dean was seen in the medical unit. He complained of pain and numbness. Dean also complained that he had not received his common fare meals.

**Discussion**

Dean argues that the defendants violated his rights under the Second, Eighth and Fourteenth Amendments. In describing his Second Amendment claims, however, Dean states that the defendants violated his right to freely exercise his religious beliefs by not serving him a common-fare tray, Doc. No. 1 at 9, ¶ 19, and retaliated against him. *Id.* at 8, ¶ 10. These rights are protected by the First Amendment, not the Second Amendment. *See Washington v. Gonyea*, 538 F. App'x 23, (2d Cir. 2013) (considering First Amendment retaliation and free exercise

claims). The Court will consider these claims as brought under the First, rather than the Second, Amendment.

Official Capacity

Dean has named the defendants in individual and official capacities. For relief, he seeks proper medical treatment for his injuries, compensation for expenses associated with outside treatment or physical therapy, and damages from the defendants in official and individual capacities. The Eleventh Amendment bars claims for damages against a state official in his official capacity unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Dean has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, all claims against the defendants in their official capacities for damages are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

As noted, Dean seeks injunctive relief in the form of medical treatment for his injuries. Dean states in his complaint that all defendants, except Commissioner Semple, work at Corrigan-Radgowski Correctional Center. As Dean is no longer confined there, these defendants cannot provide him medical treatment. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against the officials of that facility." *Wright v. New York State Dep't of Corr. & Cmty. Supervision*, 568 F. App'x 53, 55 (2d Cir. 2014) (quoting *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011)) (internal quotation marks omitted). Accordingly, the request for injunctive relief against these defendants is dismissed. As Commissioner Semple is responsible for inmates in all correctional facilities, the request for injunctive relief will remain pending against him.

Use of Excessive Force

Dean alleges that defendants Iozzia and Smith used excessive force against him. To state a claim for use of excessive force under the Eighth Amendment, the force used "must be, objectively, sufficiently serious" and "the prison official involved must have a sufficiently culpable state of mind." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks and citation omitted). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted).

Dean alleges that Officer Smith unnecessarily twisted his wrist during the escort and Lieutenant Iozzia became physically and verbally aggressive when Dean asked that excessive force not be used. In the resulting altercation, Dean spit at the officers. In response he was punched and sprayed with a chemical agent. The assault continued after he had fallen to the floor. Dean also was confined in four-point restraints for 72 hours. Although Dean clearly participated in the altercation, the allegations are sufficient to state a plausible excessive force claim. This claim will proceed against defendants Iozzia and Smith.

Retaliation

Dean "believes" that Lieutenant Iozzia retaliated against him because they had "pas[t] differences." Doc. No. 1, at 8, ¶ 10. To state a Section 1983 retaliation claim, Dean must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x

143, 146 (2d Cir. 2012). Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

"Past differences" is not protected speech or conduct as required to support a retaliation claim. *See, e.g., Tolliver v. Skinner*, 2013 WL 658079, at *8, 21 (S.D.N.Y. Feb. 11, 2013) (dismissing First Amendment retaliation claim for lack of constitutionally protected activity where plaintiff based retaliation claim on "past altercation and disagreements"). In addition, Dean has not alleged any facts demonstrating a connection between the use of force and those "past differences," whatever they might be. His opinion as to a retaliatory motive is insufficient. The retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

<u>Free Exercise of Religion</u>

Dean alleges that defendant Shabenas violated his right to freely practice his Rastafarian religion by ordering that Dean eat bread and cheese sandwiches, rather than a common-fare meal tray, while confined on four-point restraints in RHU over the course of three days.

The First Amendment guarantees, among other things, the free exercise of religion. The Free Exercise Clause "extends to prisoners and includes their right to meals that comport with religious requirements." *Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (citing *Ford v. McGinnis*, 352 F.3d 582, 588, 597 (2d Cir. 2003)). The constitutional rights of prisoners, however, must be balanced against the interests of prison officials charged with administering

6

correctional facilities. *Ford*, 352 F.3d at 588. Thus, the courts judge a prisoner's free-exercise claim "under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (quoting *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988)). An official action challenged under the Free Exercise Clause will pass "constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). Thus, not every possible restriction on a prisoner's religious practices constitutes a First Amendment violation. *McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (There may be inconveniences so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim '*de minimis non curat le*x' applies."). Courts within the Second Circuit have applied this maxim to cases where prisoners were denied a limited number of religious meals. *See Wright v. Bibens*, No. 3:17-cv-1917(MPS), 2018 WL 5724009, at *5 (D. Conn. Nov. 1, 2018) (citing cases).

Dean alleges only that he was served bread and cheese sandwiches rather than the common-fare meal tray for three days. The Court infers from the allegation that the sandwiches are prohibited by Dean's religion, though that is not at all clear in the complaint. However, even if Dean was prohibited under his religion from eating the sandwiches, the time period is insufficient to support a cognizable claim. *See, e.g., Wright*, 2018 WL 5724009, at *6 (claim not cognizable where plaintiff given regular tray instead of common fare tray for four days); *Odom v. Dixion*, No. 04-CV-889F, 2008 WL 466255, at *10-12 (W.D.N.Y. Feb. 15, 2008) (failure to provide kosher meals on 7 occasions over several days insufficiently substantial to establish First Amendment claim). Dean's free-exercise claim is dismissed pursuant to 28 U.S.C. §

1915A(b)(1).

### Equal Protection

Dean alleges, in conclusory fashion, that the defendants violated his equal protection rights by using excessive force and injuring his left arm. This allegation is insufficient to support an equal protection claim. The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, Dean must allege facts showing that he was treated differently from similarly-situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted). Dean's equal protection claim consists of his single allegation that correctional officers "violat[ed] plaintiff(s) equal protection right(s) by using excessive force and causing injuries to the plaintiff(s) left-arm." Doc. No. 1 at 9, ¶ 19. This wholly conclusory statement, without any supporting factual allegations, is insufficient to state a cognizable equal protection claim. *See Iqbal*, 556 U.S. at 678 (conclusory allegations insufficient to state plausible claim). The equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Supervisory Liability

Finally, the complaint may be construed to include a claim for supervisory liability. Dean alleges that, after he was assaulted and placed naked in cell 112 for ten hours without any

clothing or medical care, "Lt. Iozzia, Unit Manager; (John/Jane Smith), Captain Shabenas, Warden Santiago, Deputy Warden; Zegarzulski and Martin did not do anything to aid plaintiff of his condition, also Lt. Conger and Commissioner Scott S. Semple." Doc. No. 1 at 7, ¶ 7.

To prevail on a claim for supervisory liability under section 1983, the plaintiff must provide evidence that the defendants were personally involved in the alleged constitutional violations. *See Spavone v. N.Y. State Dep't of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir. 2013). Prior to the Supreme Court's decision in *Iqbal,* the Second Circuit held that personal involvement could be shown by demonstrating that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995). In *Iqbal,* the Supreme Court emphasized that "supervisor liability" is a misnomer and should not be confused with *respondeat superior. Iqbal,* 556 U.S. at 676-77. The Supreme Court required that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The Court noted, however, that the required showing will vary depending on the constitutional question at issue. *Id.* at 676.

In *Iqbal*, the constitutional issue involved invidious discrimination. The Court found that the plaintiff was required to "plead and prove that the defendant acted with discriminatory

purpose," *id.* at 676, and, therefore, that allegations that the supervisor knew "of his subordinate's discriminatory purpose" were insufficient. *Id.* at 677.

The Second Circuit has not had occasion to decide whether *Iqbal* abrogates some or all of the *Colon* factors with respect to supervisory liability. *See Turkmen v. Hasty,* 789 F.3d 218, 250 (2d Cir. 2015) *(Colon* factors may demonstrate personal involvement, provided "th[e] standard— be it deliberate indifference, punitive intent, or discriminatory intent—reflects the elements of the underlying constitutional tort"), *reversed in part on other grounds sub. nom., Ziglar v. Abbas,* 137 S. Ct. 1843 (2017); *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after [*Iqbal*]."); *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations").

Without definitive guidance, this Court will continue to consider all five *Colon* factors when assessing allegations of supervisory liability in claims such as these alleging deliberate indifference. *See, e.g. Matteo v. Perez*, No. 16-CV-1837(NSR), 2017 WL 4217142, at *4 (S.D.N.Y. Sept. 19, 2017) (assuming all five *Colon* factors apply where claim does not require showing of discriminatory intent); *Carpenter v. Apple,* No. 15-CV-1269(GTS/CFH), 2017 WL 3887908, at *9 (N.D.N.Y. Sept. 5, 2017); *Stamile v. County of Nassau,* No. 10-CV-2632 (AKT), 2014 WL 1236885, at *4 (E.D.N.Y. Mar. 25, 2014) (applying *Colon* in absence of clear direction from Second Circuit).

All the defendants named in this claim are unit supervisors or high-ranking officials. Dean alleges that defendants Iozzia and Smith were involved in his placement and that defendant

Shabenas ordered that he receive bag meals. These allegations are sufficient, at this stage of litigation, to support a plausible claim that defendants Iozzia, Smith, and Shabenas were aware of the use of force and Dean's placement in cell 112 with no clothing or medical care for ten hours. The supervisory liability claims will proceed against defendants Iozzia, Smith, and Shabenas.

Dean does not allege facts demonstrating that defendants Santiago, Zegarzulski, Martin, Conger and Semple were ever aware of the incident. To impose supervisory liability, Dean must allege that the defendants had actual or constructive notice of the alleged constitutional violations and were grossly negligent or deliberately indifferent by failing to act. *See Abrams v. Erfe*, No. 3:17-CV-1570(CSH), 2018 WL 3238825, at *10 (D. Conn. July 3, 2018) (citing *Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)). Absent any facts to support his claim, Dean's supervisory liability claims against defendants Santiago, Zegarzulski, Martin, Conger and Semple are dismissed pursuant to 28 U.C.S. § 1915A(b)(1).

**Orders**

For all the foregoing reasons, the following claims are DISMISSED pursuant to 28 U.S.C. §1915A(b): the claims against all defendants in their official capacities for damages; the claims for injunctive relief against all defendants except Commissioner Semple; the retaliation claim; the free-exercise claim; the equal protection claim; and the supervisory liability claims against defendants Santiago, Zegarzulski, Martin, Conger, and Semple.

The case will proceed on the Eighth Amendment claim for use of excessive force against defendants Iozzia and Smith in their individual capacities, the supervisory liability claims against defendants Iozzia, Smith, and Shabenas in their individual capacities, and the request for injunctive relief against defendant Semple in his official capacity.

11

The Court enters the following additional orders:

(1) **The Clerk shall** verify the current work addresses for defendants Iozzia, Smith, and Shabenas with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendant Semple in his official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) T**he Clerk shall** send Dean a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Dean changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Dean must give notice of a new address even if he is incarcerated. Dean should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Dean has more than one pending case, he should indicate all the case numbers in the notification of change of address. Dean should also notify the defendants or the attorney for the defendants of his new address.

(10) Dean shall utilize the Prisoner Efiling Program when filing documents with the court. Dean is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of March 2019.

/s/
Kari A. Dooley
United States District Judge