UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEVON DEAN,
          Plaintiff,

      v.                                        CASE NO. 3:18-cv-1861 (KAD)

IOZZIA, et al.,
          Defendants.

**MEMORANDUM OF DECISION RE: DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 43]**

Kari A. Dooley, United States District Judge

      The plaintiff, Devon Dean ("Dean"), commenced this civil rights action asserting violations of his constitutional rights. He claims that several defendants used excessive force against him and that other defendants have supervisory liability arising out of this use of excessive force. The defendants, Iozzia, Smith, Shabenas, Semple, Pacileo, Muckle, Guadet, Senick, Dumas, Turner, Melton, and Ciesnik ("the Defendants"), filed a motion for summary judgment on multiple grounds including: that some claims are barred by the applicable statute of limitations; that the Plaintiff failed to exhaust administrative remedies; that Plaintiff has not established a claim for excessive force, and that the Defendants are entitled to qualified immunity. For the following reasons, the Defendants' motion is **granted**.

**Standard of Review**

      A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[1]**

On January 25, 2016, Dean was assigned to H-Pod Lower Tier at Corrigan Correctional Institution. Defs.' Local Rule 56(a)1 Statement, Doc. No. 43-2, ¶ 1. During a unit shakedown, Dean refused a direct order by Lieutenant Iozzia. *Id.* ¶ 2. Dean was issued a disciplinary report for flagrant disobedience and taken to the restrictive housing unit ("RHU") pending adjudication of the charge. *Id.* ¶ 3.

At 8:50 a.m. Lieutenant Iozzia directed Officer Pacileo to begin recording Dean's escort to RHU on a handheld video camera. *Id.* ¶ 4. Officers Ceisnik and Senick escorted Dean. *Id.* ¶ 5. During the escort, Dean became verbally assaultive and turned his face toward Officer Senick while jerking his arms. *Id*. ¶ 6. Lieutenant Iozzia viewed these actions as raising concerns that Dean might assault the officers. *Id.* ¶¶ 7-8. He ordered the officers to secure Dean in a fixed position and cautioned Dean that continued aggressive statements and failure to follow directions would be considered aggression toward staff. *Id.* ¶ 9. Lieutenant Iozzia also ordered the officers to use a reverse escort and reverse wrist lock position. *Id*. ¶ 10.

Dean was taken to the medical unit. *Id.* ¶ 11. Mental health staff cleared Dean for RHU placement. *Id.* ¶ 13. The camera recorded an unidentified person stating that Dean appeared to be collecting saliva in his mouth. *Id.* ¶ 14. Lieutenant Iozzia heard Dean clear his throat as if he were collecting saliva in his mouth. *Id.* ¶ 15. The Defendants became concerned that Dean might spit at staff, creating a safety hazard. *Id.* ¶¶ 16-17. Leaving the medical unit, Dean proceeded, under reverse escort, to the elevator. *Id.* ¶ 18.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. One such exhibit is a CD containing the video footage of the events at issue, which the Court has viewed in its entirety.

As Dean and the Defendants were leaving the elevator, Dean lunged forward striking Lieutenant Iozzia with a large amount of saliva. *Id.* ¶ 20. In response, Lieutenant Iozzia deployed a quick burst of chemical agent. *Id.* ¶ 21. Dean contends that the chemical agent was deployed after the Defendants repeatedly punched and kicked him. Pl.'s Local Rule 56(a)2 Statement, Doc. No. 50 at 24 ¶ 21. Correctional staff brought Dean to the floor to secure his arms and legs. Doc. No. 43-2 ¶¶ 22-23. Dean was combative and ignored orders. *Id.* ¶ 24. Dean contends that he was defending himself from the assault. Doc. No. 50 at 24 ¶ 24. Officer Melton was ordered to place Dean in leg restraints. Doc. No. 43-2 ¶ 25.

Captain Shabenas relieved Lieutenant Iozzia of duty because Lieutenant Iozzia had a large amount of saliva on his chest and neck. *Id.* ¶¶ 26-28. Captain Shabenas took over supervision of the escort and obtained Dean's agreement to comply with commands. *Id.* ¶ 31. Captain Shabenas ordered Officers Dumas and Gaudet to escort Dean to the showers in RHU to remove the chemical agent from his face. *Id.* ¶ 32. During this escort, Dean pulled forward and struck his head on the window next to the door of the unit. *Id.* ¶ 33. No injuries were observed. *Id.* ¶ 34. Dean was told to stop resisting staff and was placed in the shower without further incident. *Id.* ¶¶ 34-35.

Dean was taken to his cell and underwent a controlled strip search. *Id.* ¶ 36. Dean was given a clean shirt and new jumper because his clothes may have been contaminated from the chemical agent. *Id.* ¶ 37.

**Discussion**

The Defendants move for summary judgment on five grounds: (1) some claims are time-barred, (2) Dean failed to exhaust his administrative remedies before commencing this action, (3)

Dean cannot prove the Defendants used excessive force against him; (4) the Defendants are protected by qualified immunity, and (5) Dean failed to establish the requirements for declaratory and injunctive relief. As the court concludes that Dean failed to properly exhaust his administrative remedies, the court only addresses this ground for relief.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate

Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims related to conditions of confinement, to include claims of excessive force as are at issue here, are subject to the Inmate Grievance Procedure set forth in Administrative Directive 9.6(6).

Under those procedures, an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit

Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal. *See id.* at 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. *See id.* at 9.6(6)(L).

The Defendants submit the declarations of Counselor Jessica Bennett, the grievance coordinator at MacDougall-Walker Correctional Institution, and Counselor Michelle King, the grievance coordinator at Corrigan Correctional Institution. *See* Defs.' Mem. Ex. E, Doc. No. 43-8, & Ex. F, Doc. No. 43-9. Both counselors state that they were asked to search for any non-

medical grievances filed by Dean for the period from January 1, 2016 through June 30, 2016. Doc. No. 43-8 ¶ 8, Doc. No. 43-9 ¶ 8. Counselor Bennett located only two grievances. *Id.* ¶ 9. The first grievance concerned FOI requests that Dean had made regarding previously filed grievances. Id. ¶ 10. This grievance was rejected as FOI issues are adjudicated through a separate procedure, not the inmate grievance process. *Id.* ¶ 11. Dean then filed a Level 2 appeal with respect to the FOI grievance which also was rejected.[2] *Id.* ¶ 13. Counselor Bennett located no grievance relating to the use of excessive force or the events which transpired on January 25, 2016. *Id*. ¶ 14. Counselor King also located no such grievances. Doc. No. 43-9 ¶ 9.

In his opposition, Dean avers that he attempted informal resolution on February 8, 2016 through an inmate request submitted to Warden Santiago. When he received no response, he asserts that he submitted a second request to Warden Santiago on February 12, 2016. This document is attached to Dean's opposition and was receive-stamped on February 17, 2016. It appears to have been forwarded to Deputy Warden Martin. Dean requests as follows: "I'm requesting … a response to the request I sent you on 2/7/16? regarding an investigation of an incident that occurred on 1/25/16 between Lt. Iozzia and I, seeking ur decision in this matter. So as to proceed with my grievance regarding whether or not you found the allegation of excessive use of force to [be] substantiated or unsubstantiated. Please respond, thank you. …" The Court accepts, for purposes of this analysis that the February 12, 2016 Inmate Request Form was or reflected efforts by Dean to informally address his complaint of excessive force. Dean states that he received no response from Deputy Warden Martin.

Dean next states that he then filed a Level 1 grievance on February 28, 2016 while he was

---

[2] The Court has reviewed the grievance and the DOC response to the grievance as both were submitted for the court's review.

confined in RHU. As he was in restrictive housing, Mental Health Dr. Cousins "Liz" placed the grievance in the Administrative Remedies box for him. He received no response. Dean states that he sent an additional inmate request to Deputy Warden Martin but received no response. The DOC has no record of this purported Level 1 grievance. Dean does not submit a copy of this grievance and nor does he submit any affidavit from Dr. "Liz" regarding her receipt or deposit of the grievance in the appropriate repository. Again, for purposes of this analysis, the Court accepts that Dean's sworn averments in this regard, create a genuine issue of material fact as to whether he, in fact, filed a Level 1 grievance as required under the Administrative Directive. This does not end the analysis however.[3]

Even if a trier of fact were to conclude that Dean did, in fact, file a Level 1 grievance, there is still no genuine issue of material fact that Dean failed to exhaust his administrative remedies. Dean asserts that he received no response from his Level 1 grievance. But the directive clearly states that if a timely response to the Level 1 grievance is not received, the inmate should file a Level 2 grievance appeal and, if he receives no response at that level, should proceed to file a Level 3 grievance. Dean offers no evidence that he did this and the DOC has no record of same. Thus, he did not utilize all procedures provided in the directive and has not properly exhausted his administrative remedies on the claims asserted in this case.[4]

---

[3] Dean also submits a copy of an Inmate Request Form dated February 19, 2016 in which he requests copies of the incident report or other documents relating to the January 25, 2016 occurrence. Dean received a response that the incident had "not been closed out yet" and therefore the incident report could not be disseminated to Dean. While probative of Dean's plan at the time to seek redress through the grievance process, the Form CN 9601 is not and cannot reasonably be construed to be, a grievance.

[4] Dean also offers the Affidavit of another inmate, Daniel Wine. Mr. Wine details his experience with the grievance process and opines that there is a concerted effort by DOC personnel to ignore grievances as a means of defeating an inmate's ability to exhaust administrative remedies so less suits would "move past the IRO." Mr. Wine's testimony is inadmissible for a variety reasons but even if considered, it does not alter the court's analysis. Mr. Wine fails to account for the fact that when an effort to exhaust administrative remedies is ignored or not responded to, the Administrative Directive affords inmates a path forward to exhaustion notwithstanding. His

Dean directs the court to two cases from other circuits that, he contends, require a finding that failure to respond to a grievance signifies exhaustion of administrative remedies. Dean is mistaken. First, cases from other circuits are not binding on this court. *See Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 471 (S.D.N.Y. 2012) ("decisions by other circuits are obviously not binding precedent here"); *see also Chen v. Holder*, 367 F. App'x 237, 238 (2d Cir. 2010) (unnumbered footnote reminding counsel that cases from other circuits are not binding precedent in the Second Circuit Court of Appeals). Second, Dean misapprehends the holding of one of those cases. In *Whitington v. Ortiz*, 472 F.3d 804 (10th Cir. 2007), correctional officials failed to respond to the final grievance in the state's grievance process. The court held that failure to respond to the final grievance within the time permitted was sufficient to demonstrate exhaustion. *Id.* at 807-08. Unlike Whitington, Dean did not complete the grievance process by pursuing his grievance to Level 3. Thus, even if the case were persuasive precedent, it would not apply to the facts here. Finally, Dean cites *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005), a decision which predates *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006), the decision in which the Supreme Court held that inmates must follow all the steps available and comply with all deadlines and other procedural rules before commencing an action in federal court.

In sum, Dean was concededly aware of the grievance appeal process but declined to use it. As a result, he has not exhausted his administrative remedies for the claims in the suit.

**Conclusion**

The Defendants' motion for summary judgment [**Doc. No. 43**] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

---

perceived conspiracy to thwart the inmates' efforts at exhaustion could therefore never succeed. As noted above, it is this path that Dean failed to take, even assuming he filed, as he asserts, a Level 1 grievance.

**SO ORDERED** this 23rd day of January 2020 at Bridgeport, Connecticut.

                                           /s/
                                           Kari A. Dooley
                                           United States District Judge